**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **WAYNE G. WEIDNER and SANDRA M. WEIDNER,**<br><br>Plaintiffs,<br><br>v.<br><br>ABB, INC., individually and as successor in interest to BAILEY METER COMPANY;<br><br>AIR & LIQUID SYSTEMS CORPORATION, as successor by merger to BUFFALO PUMPS, INC.;<br><br>ARMSTRONG INTERNATIONAL, INC.;<br><br>BAYER CROPSCIENCE HOLDING, INC., individually and as successor in interest to AMCHEM PRODUCTS, INC. and BENJAMIN FOSTER COMPANY;<br><br>BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, successor by merger to BRIDGESTONE/FIRESTONE, INC., f/k/a THE FIRESTONE TIRE & RUBBER COMPANY;<br><br>CARRIER CORPORATION;<br><br>ELECTROLUX HOME PRODUCTS, INC.;<br><br>ELLIOTT COMPANY;<br><br>FLOWSERVE US, INC., as successor to ROCKWELL MANUFACTURING COMPANY, EDWARD VALVES, INC., and NORDSTROM VALVES, INC.;<br><br>FMC CORPORATION, individually, and as successor to NORTHERN PUMP COMPANY; | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | **CIVIL ACTION NO.**<br><br>**CIVIL ACTION COMPLAINT**<br><br>**PLAINTIFFS DEMAND A JURY TRIAL** |

| | |
|---|---|
| FOSTER WHEELER ENERGY CORPORATION; | § |
| GENERAL ELECTRIC COMPANY; | § |
| GOULDS PUMPS LLC; | § |
| GREENE, TWEED & CO., INC.; | § |
| GRINNELL LLC, d/b/a GRINNELL CORPORATION; | § |
| HENKEL CORPORATION n/k/a HENKEL US OPERATIONS CORPORATION; | § |
| IMO INDUSTRIES, INC. f/k/a DELAVAL STEAM TURBINE COMPANY; | § |
| ITT LLC; | § |
| JENKINS BROS.; | § |
| METROPOLITAN LIFE INSURANCE COMPANY; | § |
| PARAMOUNT GLOBAL, f/k/a VIACOMCBS, INC., f/k/a CBS CORPORATION, a Delaware corporation, f/k/a VIACOM, INC., successor by merger to CBS CORPORATION, a Pennsylvania corporation, f/k/a WESTINGHOUSE ELECTRIC CORPORATION, individually and as successor-in-interest to BF STURTEVANT CO.; | § |
| REDCO CORPORATION, f/k/a CRANE CO.; | § |
| SPIRAX SARCO, INC.; | § |
| SUPERIOR LIDGERWOOD MUNDY CORP., as successor-in-interest to M.T. DAVIDSON CO.; | § |
| TDY INDUSTRIES, INC. f/k/a Teledyne Industries, Inc., individually, and as successor to FARRIS ENGINEERING; | § |
| UNIROYAL HOLDING, INC.; | § |

| | |
|---|---|
| | § |
| UNION CARBIDE CORPORATION; | § |
| | § |
| VALVES AND CONTROLS US, INC., f/k/a WEIR VALVES & CONTROLS USA, INC., f/k/a ATWOOD & MORRILL CO., INC.; | § § § |
| | § |
| VELAN VALVE CORP.; | § |
| | § |
| VIKING PUMP, INC.; | § |
| | § |
| YORK INTERNATIONAL CORPORATION; | § |
| | § |
| WARREN PUMPS, LLC; | § |
| | § |
| Defendants. | § |

## **CIVIL ACTION COMPLAINT**

Plaintiffs WAYNE G. WEIDNER and SANDRA M. WEIDNER sue the above-named Defendants for compensatory and punitive damages, by and through their undersigned attorneys, and hereby bring this Civil Action Complaint, and allege:

## **JURISDICTION AND VENUE**

1. This Court has jurisdiction over the parties pursuant to 28 USC §1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and is between citizens of different states.

2. This Court has personal jurisdiction over the Defendants because Plaintiffs' claims arise from Defendants' conduct in:

(a) Transacting business in the Commonwealth of Massachusetts, including the sale, supply, purchase, and/or use of asbestos and/or asbestos-containing products, within this State;

(b) Contracting to supply services or things in this State;

(c) Commission of a tortious act in whole or in part in this State;

(d) Having an interest in, using, or possessing real property in this State; and/or

(e) Entering into a contract to be performed in whole or in part by either party in this State.

3. Plaintiffs' claims against the Product Defendants, as defined herein, arise out of Defendants' purposeful efforts to serve directly or indirectly the market for their asbestos and/or asbestos-containing products in this State, either through direct sales or through utilizing an established distribution channel with the expectation that their products would be purchased and/or used within Massachusetts.

4. All of the named Defendants are corporations whose substantial and/or systematic business in Massachusetts caused injury to Plaintiffs from his work in the Commonwealth, which subjects them to the jurisdiction of the Massachusetts courts pursuant to the Massachusetts Long-Arm Statute and the United States Constitution.

5. Pursuant to 28 USC §1391(b)(2), venue is proper in this judicial district because a substantial part of the events or omissions occurred in Massachusetts.

## GENERAL ALLEGATIONS

6. Plaintiff Wayne G. Weidner has been diagnosed with malignant mesothelioma.

7. Plaintiff Wayne G. Weidner's cumulative exposure to asbestos as a result of acts and omissions of Defendants and their defective products, individually and together, was a substantial factor in causing Plaintiff's mesothelioma and other related injuries and therefore under Massachusetts law is the legal cause of Plaintiff's injuries and damages.

8. Plaintiff Wayne G. Weidner was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

9. Plaintiff Wayne G. Weidner worked with, or in close proximity to others who worked with, asbestos-containing materials including but not limited to asbestos-containing products and other asbestos-containing materials manufactured and/or sold by Defendants identified above.

10. Each of the named Defendants is liable for damages stemming from its own tortious conduct or the tortious conduct of an “alternate entity” as hereinafter defined. Defendants are liable for the acts of their “alternate entity” and each of them, in that there has been a corporate name change, Defendant is the successor by merger, by successor in interest, or by other acquisition resulting in a virtual destruction of Plaintiff’s remedy against each such “alternate entity”; Defendants, each of them, have acquired the assets, product line, or a portion thereof, of each such “alternate entity”; such “alternate entities” have acquired the assets, product line, or a portion thereof of each such Defendant; Defendants, and each of them, caused the destruction of Plaintiff’s remedy against each such “alternate entity”; each such Defendant has the ability to assume the risk-spreading role of each such “alternate entity;” and that each such defendant enjoys the goodwill originally attached to each “alternate entity.”

| **DEFENDANT** | **ALTERNATE ENTITY** |
|---|---|
| ABB, INC. | BAILEY METER COMPANY |
| AIR & LIQUID SYSTEMS CORPORATION | BUFFALO PUMPS, INC.; |
| BAYER CROPSCIENCE, INC. | AMCHEM PRODUCTS, INC. and BENJAMIN FOSTER COMPANY |
| BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC | BRIDGESTONE/FIRESTONE, INC. THE FIRESTONE TIRE & RUBBER COMPANY |

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| ELECTROLUX HOME PRODUCTS, INC. | COPES VULCAN |
| ELLIOTT COMPANY | ELLIOTT TURBOMACHINERY CO., INC |
| FLOWSERVE US, INC. | ROCKWELL MANUFACTURING COMPANY, EDWARD VALVES, INC., and NORDSTROM VALVES, INC. |
| FMC CORPORATION | NORTHERN PUMP COMPANY |
| GRINNELL LLC | GRINNELL CORPORATION |
| HENKEL CORPORATION | DEXTER CORPORATION |
| IMO INDUSTRIES, INC. | DELAVAL STEAM TURBINE COMPANY |
| ITT LLC | ITT CORPORATION,<br>ITT INDUSTRIES INC.<br>ITT FLUID PRODUCTS CORP.<br>HOFFMAN SPECIALTY MFG. CORP.<br>FOSTER ENGINEERING |
| PARAMOUNT GLOBAL | VIACOMCBS INC.<br>VIACOM INC.<br>CBS CORPORATION (a Delaware corporation)<br>CBS CORPORATION (a Pennsylvania corporation)<br>WESTINGHOUSE ELECTRIC CORPORATION<br>B.F. STURTEVANT CO. |
| REDCO CORPORATION | CRANE CO.<br>COCHRANE CORPORATION CHAPMAN VALVE COMPANYSWARTWOUT CO.; |

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| SPIRAX SARCO, INC. | SARCO COMPANY |
| SUPERIOR-LIDGERWOOD MUNDY CORPORATION | M.T. DAVIDSON CO. |
| TDY INDUSTRIES, INC. | TELEDYNE INDUSTRIES, INC.<br>FARRIS ENGINEERING |
| UNIROYAL HOLDING, INC.; | UNITED STATES RUBBER COMPANY, INC. |
| VALVES AND CONTROLS US, INC. | WEIR VALVES & CONTROLS USA, INC.<br>ATWOOD & MORRILL CO., INC. |
| WARREN PUMPS LLC | WARREN PUMPS, INC.<br>QUIMBY EQUIPMENT CO, INC. |

11. Plaintiffs have been informed and believe, and thereon allege, that at all times herein mentioned, Defendants or their "alternate entities" were or are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the Commonwealth of Massachusetts, or the laws of some other state or foreign jurisdiction, and that said Defendants were and/or are authorized to do business in the Commonwealth of Massachusetts, and that said Defendants have regularly conducted business in the Commonwealth of Massachusetts.

12. Plaintiffs have been informed and believe, and thereon allege, that progressive lung disease, mesothelioma and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

13. As a direct and proximate result of the conduct as alleged within, Plaintiff Wayne G. Weidner has suffered permanent injuries, including, but not limited to, mesothelioma and other lung damage, as well as the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to his damage in the sum of the amount as the trier of fact determines is proper.

14. As a direct and proximate result of the conduct as hereinafter alleged, Plaintiff Wayne G. Weidner incurred and is continuing to incur liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this time. Plaintiff requests leave to supplement this Court and all parties accordingly when the true and exact cost of Plaintiff's medical treatment is ascertained.

## PARTIES

15. The Plaintiffs, Wayne G. Weidner and Sandra M. Weidner, are current citizens of the State of Ohio.

16. The Defendants that manufactured, sold, and/or distributed asbestos-containing products or raw asbestos materials for use in Massachusetts and other states at times relevant to this action are referred to herein as "Product Defendants." At all times relevant to this action, the Product Defendants and the predecessors of the Product Defendants for whose actions the Product Defendants are legally responsible, were engaged in the manufacture, sale, and distribution of asbestos-containing products and raw materials.

17. At all times herein mentioned, each of the named Defendants was an entity and/or the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent,

subsidiary, or division of an entity, hereinafter referred to collectively as "alternate entities," engaged in the business of researching, studying, manufacturing, fabricating, designing, modifying, labeling, instructing, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, other products containing asbestos, and products manufactured for foreseeable use with asbestos products.

18. Defendant, **ABB INC., individually and as successor in interest to BAILEY METER COMPANY**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in North Carolina. At all times material hereto, **ABB INC., individually and as successor in interest to BAILEY METER COMPANY**, manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-insulated and asbestos-containing Bailey Valves. Plaintiffs sued **ABB INC.** as a Product Defendant. Plaintiffs' claims against **ABB INC.** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

19. Defendant, **AIR & LIQUID SYSTEMS CORPORATION, as successor by merger to BUFFALO PUMPS, INC.**, was and is a company incorporated under the laws of the Commonwealth of Pennsylvania with its principal place of business in Pennsylvania. At all times material hereto, **AIR & LIQUID SYSTEMS CORPORATION, as successor by merger to BUFFALO PUMPS, INC.**, manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-

insulated and asbestos-containing Buffalo pumps. Plaintiffs sued **AIR & LIQUID SYSTEMS CORPORATION** as a Product Defendant. Plaintiffs' claims against **AIR & LIQUID SYSTEMS CORPORATION** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

20. Defendant, **ARMSTRONG INTERNATIONAL, INC.**, was and is a company incorporated under the laws of the state of Michigan with its principal place of business in Michigan. At all times material hereto, **ARMSTRONG INTERNATIONAL, INC.** manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-insulated and asbestos-containing Armstrong steam traps. Plaintiffs sued **ARMSTRONG INTERNATIONAL, INC.** as a Product Defendant. Plaintiffs' claims against **ARMSTRONG INTERNATIONAL, INC.** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

21. Defendant, **BAYER CROPSCIENCE HOLDING, INC., individually and as successor in interest to AMCHEM PRODUCTS, INC. and BENJAMIN FOSTER COMPANY**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Missouri. At all times material hereto, **BAYER CROPSCIENCE HOLDING, INC., individually and as successor in interest to AMCHEM PRODUCTS, INC. and BENJAMIN FOSTER COMPANY**, manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Benjamin Foster adhesives, coating, and paint. Plaintiffs sued **BAYER CROPSCIENCE HOLDING, INC.** as a Product Defendant. Plaintiffs' claims against **BAYER**

**CROPSCIENCE HOLDING, INC**., arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

22. Defendant, **BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, successor by merger to BRIDGESTONE/FIRESTONE, INC., f/k/a THE FIRESTONE TIRE & RUBBER COMPANY**, was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Tennessee. At all times material hereto, **BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, successor by merger to BRIDGESTONE/FIRESTONE, INC., f/k/a THE FIRESTONE TIRE & RUBBER COMPANY**, manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing sheet gaskets. Plaintiffs sued **BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC** as a Product Defendant. Plaintiffs' claims against **BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

23. Defendant, **CARRIER CORPORATION**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Florida. At all times material hereto, **CARRIER CORPORATION** manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Carrier refrigeration compressors or equipment. Plaintiffs sued **CARRIER CORPORATION** as a Product Defendant. Plaintiffs' claims against **CARRIER CORPORATION** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

24. Defendant, **ELECTROLUX HOME PRODUCTS, INC.**, was and is a company incorporated in Delaware with its principal place of business in North Carolina. At all times material hereto, **ELECTROLUX HOME PRODUCTS, INC.** manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-insulated and asbestos-containing Copes or Copes-Vulcan valves. Plaintiffs sued **ELECTROLUX HOME PRODUCTS, INC.** as a Product Defendant. Plaintiffs' claims against ELECTROLUX HOME PRODUCTS, INC. arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

25. Defendant, **ELLIOTT COMPANY**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Pennsylvania. At all times material hereto, **ELLIOTT COMPANY** manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Elliott deaerating feed tanks. Plaintiffs sued **ELLIOTT COMPANY** as a Product Defendant. Plaintiffs' claims against **ELLIOTT COMPANY** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

26. Defendant, **FLOWSERVE US, INC., as successor to ROCKWELL MANUFACTURING COMPANY, EDWARD VALVES, INC., and NORDSTROM VALVES, INC.**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Texas. At all times material hereto, **FLOWSERVE US, INC., as successor to ROCKWELL MANUFACTURING COMPANY, EDWARD VALVES, INC., and NORDSTROM VALVES, INC.,** manufactured, processed, assembled, supplied, distributed,

sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-insulated and asbestos-containing Rockwell, Edward, and Nordstrom valves. Plaintiffs sued **FLOWSERVE US, INC.** as a Product Defendant. Plaintiffs' claims against **FLOWSERVE US, INC.** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

27. Defendant, **FMC CORPORATION, individually, and as successor to NORTHERN PUMP COMPANY**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Pennsylvania. At all times material hereto, **FMC CORPORATION, individually, and as successor to NORTHERN PUMP COMPANY**, manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Northern pumps. Plaintiffs sued **FMC CORPORATION** as a Product Defendant. Plaintiffs' claims against **FMC CORPORATION** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

28. Defendant, **FOSTER WHEELER ENERGY CORPORATION**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Texas. At all times material hereto, **FOSTER WHEELER ENERGY CORPORATION** manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Foster Wheeler economizers. Plaintiffs sued **FOSTER WHEELER ENERGY CORPORATION** as a Product

Defendant. Plaintiffs' claims against **FOSTER WHEELER ENERGY CORPORATION** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

29. Defendant, **GENERAL ELECTRIC COMPANY**, was and is a company incorporated under the laws of the State of New York with its principal place of business in Massachusetts. At all times material hereto, **GENERAL ELECTRIC COMPANY** manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing General Electric turbines and ship service turbine generators. Plaintiffs sued **GENERAL ELECTRIC COMPANY** as a Product Defendant. Plaintiffs' claims against **GENERAL ELECTRIC COMPANY** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

30. Defendant, **GOULDS PUMPS, LLC**, was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in New York. At all times material hereto **GOULDS PUMPS, LLC** manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-insulated and asbestos-containing Goulds pumps. Plaintiffs sued **GOULDS PUMPS, LLC** as a Product Defendant. Plaintiffs' claims against **GOULDS PUMPS, LLC** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

31. Defendant, **GREENE, TWEED & CO., INC.**, was and is a company incorporated under the laws of the State of North Carolina with its principal place of business in North Carolina. At all times material hereto **GREENE, TWEED & CO., INC.** manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed

substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Palmetto gaskets and packing. Plaintiffs sued **GREENE, TWEED & CO., INC.** as a Product Defendant. Plaintiffs' claims against **GREENE, TWEED & CO., INC**., arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

32. Defendant, **GRINNELL LLC, d/b/a GRINNELL CORPORATION**, was and is limited liability company incorporated under the laws of the State of New York with its principal place of business in Florida. At all times material hereto **GRINNELL LLC, d/b/a GRINNELL CORPORATION** manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-insulated and asbestos-containing Grinnell valves. Plaintiffs sued **GRINNELL LLC, d/b/a GRINNELL CORPORATION** as a Product Defendant. Plaintiffs' claims against **GRINNELL LLC, d/b/a GRINNELL CORPORATION** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

33. Defendant, **HENKEL CORPORATION, n/k/a HENKEL US OPERATIONS CORPORATION**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Connecticut. At all times material hereto, **HENKEL CORPORATION, n/k/a HENKEL US OPERATIONS CORPORATION**, manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing aerospace adhesive and epoxy products. Plaintiffs sued **HENKEL CORPORATION, n/k/a HENKEL US OPERATIONS**

**CORPORATION** as a Product Defendant. Plaintiffs' claims against **HENKEL CORPORATION, n/k/a HENKEL US OPERATIONS CORPORATION** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

34. Defendant, **IMO INDUSTRIES, INC. f/k/a DELAVAL STEAM TURBINE COMPANY**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Maryland. At all times material hereto, **IMO INDUSTRIES, INC. f/k/a DELAVAL STEAM TURBINE COMPANY**, manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-insulated and asbestos-containing DeLaval pumps and steam turbines. Plaintiffs sued **IMO INDUSTRIES,INC.** as a Product Defendant. Plaintiffs' claims against **IMO INDUSTRIES, INC.** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

35. Defendant, **ITT LLC**, was and is a limited liability company incorporated under the laws of the State of Indiana with its principal place of business in Connecticut. **ITT LLC** is a wholly owned subsidiary of ITT Inc., an Indiana corporation. At all times material hereto, **ITT LLC** manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-insulated and asbestos-containing Foster Engineering valves. Plaintiffs sued **ITT LLC** as a Product Defendant. Plaintiffs' claims against **ITT LLC** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

36. Defendant, **JENKINS BROS.**, is a defunct company incorporated under the laws of

the State of New Jersey with its former principal place of business in Connecticut. At all times material hereto, **JENKINS BROS.** manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-insulated and asbestos-containing Jenkins valves. Plaintiffs sued **JENKINS BROS.** as a Product Defendant. Plaintiffs' claims against **JENKINS BROS.** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

37. Defendant, **METROPOLITAN LIFE INSURANCE COMPANY**, a wholly owned subsidiary of METLIFE INC., was and is a company incorporated under the laws of the State of New York with its principal place of business in New York. **METROPOLITAN LIFE INSURANCE COMPANY** has done and does business in the Commonwealth of Massachusetts. Plaintiffs sued **METROPOLITAN LIFE INSURANCE COMPANY** as a conspiracy defendant.

38. Defendant, **PARAMOUNT GLOBAL, f/k/a VIACOMCBS INC., f/k/a CBS CORPORATION, a Delaware corporation, f/k/a VIACOM, INC., successor-by-merger to CBS CORPORATION, a Pennsylvania corporation, f/k/a WESTINGHOUSE ELECTRIC CORPORATION, individually and as successor-in-interest to BF STURTEVANT CO.**, was and is a Delaware corporation with its principal place of business in New York. At all times material hereto, **PARAMOUNT GLOBAL, f/k/a VIACOMCBS INC., f/k/a CBS CORPORATION, a Delaware corporation, f/k/a VIACOM, INC., successor-by-merger to CBS CORPORATION, a Pennsylvania corporation, f/k/a WESTINGHOUSE ELECTRIC CORPORATION, individually and as successor-in-interest to BF STURTEVANT CO.,** manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment,

including, but not limited to, asbestos-insulated and asbestos-containing Sturtevant forced draft blowers and Sturtevant and Westinghouse auxiliary pump turbines. Plaintiffs sued **PARAMOUNT GLOBAL** as a Product Defendant. Plaintiffs' claims against **PARAMOUNT GLOBAL** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

39. Defendant, **REDCO CORPORATION f/k/a CRANE CO.**, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Delaware. At all times material hereto, **REDCO CORPORATION f/k/a CRANE CO.**, manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-insulated and asbestos-containing Crane, Chapman, Cochrane, and Swartwout valves, Cranite gaskets and packing, and other products. Plaintiffs sued **REDCO CORPORATION** as a Product Defendant. Plaintiffs' claims against **REDCO CORPORATION** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

40. Defendant, **SPIRAX SARCO, INC.**, was and is a corporation incorporated under the laws of the State of Delaware with its principal place of business in South Carolina. At all times material hereto, **SPIRAX SARCO, INC.** manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Sarco valves and steam traps. Plaintiffs sued **SPIRAX SARCO, INC.** as a Product Defendant. Plaintiffs' claims against **SPIRAX SARCO, INC.** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

41. Defendant, **SUPERIOR LIDGERWOOD MUNDY CORP., as successor-in-interest to M.T. DAVIDSON CO.**, was and is a company incorporated under the laws of the State of Wisconsin with its principal place of business in Wisconsin. At all times material hereto, **SUPERIOR LIDGERWOOD MUNDY CORP., as successor-in-interest to M.T. DAVIDSON CO.,** manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Davidson pumps. Plaintiffs sued **SUPERIOR LIDGERWOOD MUNDY CORP.** as a Product Defendant. Plaintiffs' claims against **SUPERIOR LIDGERWOOD MUNDY CORP.** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

42. Defendant, **TDY INDUSTRIES, INC. f/k/a TELEDYNE INDUSTRIES, INC., individually, and as successor to FARRIS ENGINEERING**, was and is a corporation incorporated under the laws of the State of California with its principal place of business in Pennsylvania. At all times material hereto, **TDY INDUSTRIES, INC. f/k/a TELEDYNE INDUSTRIES, INC., individually, and as successor to FARRIS ENGINEERING**, manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Farris valves. Plaintiffs sued **TDY INDUSTRIES, INC.** as a Product Defendant. Plaintiffs' claims against **TDY INDUSTRIES, INC.** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

43. Defendant, **UNIROYAL HOLDING, INC.**, was and is a corporation incorporated under the laws of the State of New jersey with its principal place of business in Connecticut. At all times material hereto, **UNIROYAL HOLDING, INC.** manufactured, processed, assembled,

supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing rubber or insulation products. Plaintiffs sued **UNIROYAL HOLDING, INC.** as a Product Defendant. Plaintiffs' claims against **UNIROYAL HOLDING, INC.** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

44. Defendant, **UNION CARBIDE CORPORATION**, was and is a New York corporation with its principal place of business in Texas. At all times material hereto, **UNION CARBIDE CORPORATION** mined, manufactured, processed, imported, converted, compounded, designed, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, raw asbestos fiber supplied to manufacturers of asbestos-containing products. Plaintiffs sued **UNION CARBIDE CORPORATION** as a Product Defendant. Plaintiffs' claims against **UNION CARBIDE CORPORATION** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

45. Defendant, **VALVES AND CONTROLS US, INC. f/k/a WEIR VALVES & CONTROLS USA, INC. d/b/a ATWOOD & MORRILL CO., INC.**, was and is a Texas corporation with its principal place of business in Oregon. At all times material hereto, **VALVES AND CONTROLS US, INC. f/k/a WEIR VALVES & CONTROLS USA, INC. d/b/a ATWOOD & MORRILL CO., INC.,** manufactured, engineered, designed, assembled, specified, recommended, required, sold, supplied, distributed, retailed, installed, and/or used substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Atwood & Morrill valves. Plaintiffs sued **VALVES AND CONTROLS US, INC.** as a Product Defendant. Plaintiff's claims against **VALVES AND**

**CONTROLS US, INC.** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

46. Defendant, **VELAN VALVE CORP.**, was and is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Vermont. At all times material hereto, **VELAN VALVE CORP.** manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Velan valves and steam traps. Plaintiffs sued **VELAN VALVE CORP.** as a Product Defendant. Plaintiffs' claims against **VELAN VALVE CORP.** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

47. Defendant, **VIKING PUMP, INC.**, was and is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Iowa. At all times material hereto, **VIKING PUMP, INC.** manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Viking pumps. Plaintiffs sued **VIKING PUMP, INC.** as a Product Defendant. Plaintiffs' claims against **VIKING PUMP, INC.** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

48. Defendant, **YORK INTERNATIONAL CORPORATION**, was and is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Wisconsin. At all times material hereto, **YORK INTERNATIONAL CORPORATION** manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or

equipment, including, but not limited to, asbestos-containing York compressors. **Plaintiffs sued YORK INTERNATIONAL CORPORATION** as a Product Defendant. Plaintiffs' claims against **YORK INTERNATIONAL CORPORATION** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

49. Defendant, **WARREN PUMPS, LLC**, was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Maryland. **WARREN PUMPS, LLC** is composed of a sole member, IMO Industries, Inc., a Delaware corporation. At all times material hereto, WARREN PUMPS, LLC manufactured, processed, assembled, supplied, distributed, sold, installed, replaced, incorporated, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-insulated and asbestos-containing Warren pumps. Plaintiffs sued **WARREN PUMPS, LLC** as a Product Defendant. Plaintiffs' claims against **WARREN PUMPS, LLC** arise out of this Defendant's business activities in the Commonwealth of Massachusetts.

## BACKGROUND FACTS

50. Plaintiffs bring this action for monetary damages as a result of Plaintiff Wayne G. Weidner contracting malignant mesothelioma, an asbestos-related disease.

51. Plaintiff Wayne G. Weidner was diagnosed with mesothelioma on or about March 4, 2024.

52. Plaintiff's mesothelioma was caused by his exposure to asbestos during the course of his service in the United States Navy and his subsequent civilian employment.

53. Plaintiff was exposed to Defendants' asbestos-insulated and asbestos-containing products while serving in the United States Navy as a machinist aboard the USS *Little Rock* (CLG-4) from approximately 1968 to 1972. During this period, he worked with various types of machinery and

equipment that exposed him to asbestos-insulated and asbestos-containing materials, including products manufactured, sold, and/or installed by ABB, INC., individually and as successor in interest to BAILEY METER COMPANY; AIR & LIQUID SYSTEMS CORPORATION, as successor by merger to BUFFALO PUMPS, INC.; ARMSTRONG INTERNATIONAL, INC.; BAYER CROPSCIENCE HOLDING, INC., individually and as successor in interest to AMCHEM PRODUCTS, INC. and BENJAMIN FOSTER COMPANY; BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, successor by merger to BRIDGESTONE/FIRESTONE, INC., f/k/a THE FIRESTONE TIRE & RUBBER COMPANY; CARRIER CORPORATION; ELECTROLUX HOME PRODUCTS, INC.; ELLIOTT COMPANY; FLOWSERVE US, INC., as successor to ROCKWELL MANUFACTURING COMPANY, EDWARD VALVES, INC., and NORDSTROM VALVES, INC.; FMC CORPORATION, individually, and as successor to NORTHERN PUMP COMPANY; FOSTER WHEELER ENERGY CORPORATION; GENERAL ELECTRIC COMPANY; GOULDS PUMPS LLC; GREENE, TWEED & CO., INC.; GRINNELL LLC, d/b/a GRINNELL CORPORATION; IMO INDUSTRIES, INC. f/k/a DELAVAL STEAM TURBINE COMPANY; ITT LLC; JENKINS BROS.; METROPOLITAN LIFE INSURANCE COMPANY; PARAMOUNT GLOBAL, f/k/a VIACOMCBS INC., f/k/a CBS CORPORATION, a Delaware corporation, f/k/a VIACOM, INC., successor by merger to CBS CORPORATION, a Pennsylvania corporation, f/k/a WESTINGHOUSE ELECTRIC CORPORATION, individually and as successor-in-interest to BF STURTEVANT CO.; REDCO CORPORATION, f/k/a CRANE CO.; SPIRAX SARCO, INC.; SUPERIOR LIDGERWOOD MUNDY CORP., as successor-in-interest to M.T. DAVIDSON CO.; TDY INDUSTRIES, INC. f/k/a Teledyne Industries, Inc., individually, and as successor to FARRIS ENGINEERING; UNIROYAL HOLDING, INC.; UNION CARBIDE CORPORATION; VALVES AND CONTROLS US, INC., f/k/a WEIR VALVES & CONTROLS USA, INC., f/k/a ATWOOD & MORRILL CO., INC.; VELAN VALVE CORP.; VIKING PUMP, INC.; YORK INTERNATIONAL CORPORATION; and WARREN PUMPS, LLC. Further during this time period, from in or about October 1970 to April 1971, Plaintiff was exposed to these same products while the USS *Little Rock* was overhauled at Boston Naval Shipyard in Charlestown, Massachusetts.

54. Plaintiff was also exposed to Defendants' asbestos-containing products while working at McDonnell Douglas in St. Louis, Missouri, beginning in or about 1977, including products manufactured, sold, and/or installed by HENKEL CORPORATION n/k/a HENKEL US OPERATIONS CORPORATION.

55. Plaintiff worked with, or in close proximity to others who worked with, asbestos-containing materials including but not limited to, asbestos-containing products and other asbestos-containing materials manufactured and/or sold by Defendants identified above.

56. Plaintiffs have been informed and believe, and thereon allege, that progressive lung disease, mesothelioma and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

57. As a direct and proximate result of the conduct as alleged within, Plaintiff Wayne G. Weidner suffered permanent injuries, including, but not limited to, mesothelioma and other lung damage, as well as the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to his damage in the sum of the amount as the trier of fact determines is proper.

58. As a direct and proximate result of the conduct as hereinafter alleged, Plaintiff Wayne G. Weidner incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment.

## FIRST CAUSE OF ACTION

## NEGLIGENCE

59. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

60. At all times herein mentioned, each of the named Defendants was an entity and/or the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, or division of an entity, hereinafter referred to collectively as "alternate entities," engaged in the business of researching, studying, manufacturing, fabricating, designing, modifying, labeling, instructing, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain product, namely asbestos, other products containing asbestos, and products manufactured for foreseeable use with asbestos products.

61. At all times herein mentioned, Defendants and/or their "alternate entities" singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, inadequately warned or failed to warn of the health hazards, failed to provide adequate use instructions for eliminating the health risks inherent in the use of the products, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, other products containing asbestos, and products manufactured for foreseeable use with asbestos products, in that said products caused

personal injuries to Plaintiff Wayne G. Weidner and others similarly situated, (hereinafter collectively called "exposed persons"), while being used for their intended purpose and in a manner that was reasonably foreseeable.

62. The asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that there was an alternative for asbestos that could have been used as the product or as a component instead of asbestos within a normally asbestos-containing/utilizing product. Said alternatives would have prevented the Defendants' asbestos and asbestos-containing products from causing Plaintiff's mesothelioma, due to an inability of any asbestos-alternative to penetrate the pleural lining of Plaintiff's lung, even if inhaled. Said alternatives came at a comparable cost to each of the Product Defendants and/or their "alternate entities." Said alternatives were of comparable utility to the asbestos or asbestos-containing products of Defendants and/or their "alternate entities." The gravity of the potential harm resulting from the use of Defendants' asbestos or asbestos-containing products, and the likelihood such harm would occur to users of its products, far outweighed any additional cost or marginal loss of functionality in creating and/or utilizing an alternative design, providing adequate warning of such potential harm, and/or providing adequate use instructions for eliminating the health risks inherent in the use of their products, thereby rendering the same defective, unsafe and dangerous for use by Plaintiff. The Product Defendants and/or their "alternate entities" had a duty to exercise due care in the pursuance of the activities mentioned above and Defendants, each of them, breached said duty of due care.

63. Defendants and/or their "alternate entities" knew or should have known, and intended that the aforementioned asbestos and asbestos-containing products would be transported by truck, rail, ship and other common carriers, that in the shipping process the

products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to grinding sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling by exposed persons, including Plaintiff, would use or be in proximity to and exposed to said asbestos fibers.

64. At all times relevant, the Defendants and/or their "alternate entities" were aware of their asbestos and asbestos-containing products' defect but failed to adequately warn Plaintiff, Plaintiff's family members or others in their vicinity, as well as failed to adequately warn others of the known hazards associated with their products and/or failed to recall or retrofit their products. A reasonable manufacturer, distributor, or seller of Defendants' products would have, under the same or similar circumstances, adequately warned of the hazards associated with their products.

65. Plaintiff Wayne G. Weidner used, handled or was otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products occurred at various locations as set forth in this Complaint.

66. Plaintiff Wayne G. Weidner suffers from mesothelioma, a cancer related to exposure to asbestos and asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury or disease.

67. Defendants' conduct and defective products as described in this cause of action were a direct cause of Plaintiff's injuries, and all damages thereby sustained by Plaintiff.

Plaintiffs therefore seek compensatory damages in order to make him whole, according to proof.

68. In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, failing to recall or retrofit, labeling, instructing, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products or products manufactured for foreseeable use with asbestos products, Defendants and/or their "alternate entities" did so without disregard for the safety of “exposed persons” who came in contact with asbestos and asbestos-containing products, in that Defendants and/or their "alternate entities" had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos, asbestos-containing products or products manufactured for foreseeable use with asbestos products, including, but not limited to, asbestosis, mesothelioma, lung cancer, and other lung damages. This knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of Defendants and/or their “alternate entities.”

69. Defendants and their “alternate entities” were aware that members of the general public and other “exposed persons,” who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos, asbestos-containing products, or products manufactured for foreseeable use with asbestos products, could cause injury, and Defendants and their “alternate entities,” each of them, knew that members of the general public and other “exposed persons,” who came in contact with asbestos and asbestos-containing products or products manufactured for foreseeable use with

asbestos products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

70. The above-referenced conduct of Defendants and their “alternate entities,” was motivated by the financial interest of Defendants, their “alternate entities,” and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, instructing, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos, asbestos-containing products and products manufactured for foreseeable use with asbestos products. Defendants were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to “exposed persons” without warning them of the potential hazards and further induced persons to work with and be exposed thereto, including Plaintiff Wayne G. Weidner.

71. Plaintiff and other exposed persons did not know of the substantial danger of using Defendants’ asbestos, asbestos containing-products, and products manufactured for foreseeable use with asbestos products. The dangers inherent in the use of these products were not readily recognizable by Plaintiff or other exposed persons. Defendants and/or their "alternate entities" further failed to adequately warn of the risks to which Plaintiff and others similarly situated were exposed.

72. Defendants and/or their "alternate entities" are liable for the fraudulent, oppressive, and malicious acts of their “alternate entities,” and each Defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full

knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

73. As a direct and proximate result of the aforesaid negligent acts and/or omissions by the Defendants, the Plaintiff Wayne G. Weidner developed mesothelioma, as a consequence of which, through no fault of his own, he is severely injured, disabled and damaged.

74. As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

## SECOND CAUSE OF ACTION

## BREACH OF EXPRESS AND IMPLIED WARRANTY

### Mass. Gen. Laws c. 106 §§ 2-314 and 2-318

75. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

76. Each of the Defendants impliedly warranted that said asbestos materials were of good and merchantable quality and fit for their intended use.

77. The implied warranty made by the Defendants and/or their "alternate entities" that the asbestos and asbestos-containing materials, products, or equipment, were of good and merchantable quality and for the particular intended use was breached and that certain harmful, poisonous, and deleterious matter was given off into the atmosphere wherein the Plaintiff carried out his duties while working with or in the vicinity of asbestos and asbestos-containing materials, products, or equipment.

78. Plaintiff Wayne G. Weidner was a person whom the defendants could reasonably have expected to use, consume, or be affected by the defendants' asbestos and asbestos-containing products within the meaning of the Massachusetts General Laws ch. 106, §§2-314 and 2-318, as the defendants knew or had reason to know that their asbestos and asbestos-

containing products would be used and that individuals such as Wayne G. Weidner would come into contact with such asbestos materials.

79. The defendants expressly and impliedly warranted that the asbestos and asbestos-containing products described above were merchantable, safe, and fit for their ordinary purposes, and the particular purposes and requirements of Plaintiff, Wayne G. Weidner.

80. The defendants had reason to know of the particular purposes for which their asbestos and asbestos-containing products would be used.

81. Plaintiff, Wayne G. Weidner, relied upon the defendants' skill or judgment in selecting suitable products for safe use.

82. The defendants breached these warranties in that the asbestos and asbestos-containing products they sold were not merchantable, safe, suitable, or fit for their ordinary or particular purpose.

83. As a direct and proximate result of the defendants' breach or warranties, Plaintiff Wayne G. Weidner contracted mesothelioma. Plaintiff Wayne G. Weidner has suffered serious personal injuries, endured and will continue to endure great physical pain and suffering, has and will continue to suffer from severe mental anguish and distress, and has been prevented from transacting business. He has incurred and will continue to incur substantial medical expenses in connection with treatment of his asbestos-related disease. His hearing capacity has been impaired. Further, his next of kin have been deprived of his services, protection, care, assistance, society, companionship, comfort, affection, guidance, counsel and advice.

84. As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

**THIRD CAUSE OF ACTION**

**FAILURE TO WARN AND DEFECTIVE DESIGN**

85. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

86. Under Massachusetts Law, the relevant Defendants are liable for negligent failure to warn and inadequate warning or instruction, in that they were each a manufacturer or seller of a product who acted unreasonably in failing to provide such warning or instruction. The failure to provide adequate warning or instruction was a proximate cause of the harm for which damages are sought. At the time the relevant asbestos-containing products left the control of the relevant Defendant manufacturers or sellers, the products without an adequate warning or instruction, created an unreasonably dangerous condition that the manufacturer or seller knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable claimant.

87. In the alternative, after the relevant asbestos-containing products left the control of the relevant Defendant manufacturer or sellers, the manufacturers or sellers became aware of or in the exercise of ordinary care should have known that the products posed a substantial risk of harm to a reasonably foreseeable user or consumer and failed to take reasonable steps to give adequate warning or instruction or to take other reasonable action under the circumstances.

88. The relevant Defendants breached their duties and were negligent in the following acts and/or omissions:

(a) Failed to advise Plaintiff of the dangerous characteristics of their asbestos and/or asbestos-containing materials, products or equipment;

(b) Failed or omitted to provide the Plaintiff with the knowledge as to what would be reasonably safe and sufficient apparel and protective equipment and appliances to reduce exposure to inhalable asbestos fibers, if in truth they were in any way able to protect him from being poisoned and disabled as he was by exposure to such deleterious and harmful asbestos-containing materials, products or equipment;

(c) Failed and omitted to place any warnings or sufficient warnings on their containers of said asbestos and asbestos-containing materials, products or equipment, to warn the handlers of the dangers to health in coming in contact with said asbestos and asbestos-containing materials, products or equipment;

(d) Failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt, and enforce a safety plan and a safe method of handling and installing said asbestos-containing materials, products or equipment;

(e) Inadequately warned, if, in fact, they warned at all, persons such as Plaintiff of the dangers to their health in coming in contact with and breathing said asbestos fibers from asbestos and/or asbestos-containing materials, products or equipment;

(f) Did not recommend methods to reduce exposures;

(g) After discovering that the asbestos exposure caused a progressive lung disease, the Defendants did not inform the Plaintiff of the need for monitoring and periodic evaluations up to and including the filing of this complaint.

## FOURTH CAUSE OF ACTION

## MARITIME NEGLIGENCE ALLEGATIONS

89. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

90. This Count for maritime law negligence is brought against the following Defendants (hereinafter, "Maritime Defendants"): ABB, INC., individually and as successor in interest to BAILEY METER COMPANY; AIR & LIQUID SYSTEMS CORPORATION, as successor by merger to BUFFALO PUMPS, INC.; ARMSTRONG INTERNATIONAL, INC.; BAYER CROPSCIENCE HOLDING, INC., individually and as successor in interest to AMCHEM PRODUCTS, INC. and BENJAMIN FOSTER COMPANY; BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, successor by merger to BRIDGESTONE/FIRESTONE, INC., f/k/a THE FIRESTONE TIRE & RUBBER COMPANY; CARRIER CORPORATION; ELECTROLUX HOME PRODUCTS, INC.; ELLIOTT COMPANY; FLOWSERVE US, INC., as successor to ROCKWELL MANUFACTURING COMPANY, EDWARD VALVES, INC., and NORDSTROM VALVES, INC.; FMC CORPORATION, individually, and as successor to NORTHERN PUMP COMPANY; FOSTER WHEELER ENERGY CORPORATION; GENERAL ELECTRIC COMPANY; GOULDS PUMPS LLC; GREENE, TWEED & CO., INC.; GRINNELL LLC, d/b/a GRINNELL CORPORATION; IMO INDUSTRIES, INC. f/k/a DELAVAL STEAM TURBINE COMPANY; ITT LLC; JENKINS BROS.; METROPOLITAN LIFE INSURANCE COMPANY; PARAMOUNT GLOBAL, f/k/a VIACOMCBS INC., f/k/a CBS CORPORATION, a Delaware corporation, f/k/a VIACOM, INC., successor by merger to CBS CORPORATION, a Pennsylvania corporation, f/k/a WESTINGHOUSE ELECTRIC CORPORATION, individually and as successor-in-interest to BF STURTEVANT CO.; REDCO CORPORATION, f/k/a CRANE CO.; SPIRAX SARCO, INC.; SUPERIOR LIDGERWOOD MUNDY CORP., as successor-in-interest to M.T. DAVIDSON CO.; TDY INDUSTRIES, INC. f/k/a Teledyne Industries, Inc., individually, and as successor to FARRIS ENGINEERING; UNIROYAL

HOLDING, INC.; UNION CARBIDE CORPORATION; VALVES AND CONTROLS US, INC., f/k/a WEIR VALVES & CONTROLS USA, INC., f/k/a ATWOOD & MORRILL CO., INC.; VELAN VALVE CORP.; VIKING PUMP, INC.; YORK INTERNATIONAL CORPORATION; and WARREN PUMPS, LLC. Maritime Defendants manufactured, designed, specified, sold, supplied, installed, or removed asbestos-containing products and/or equipment which was the source of airborne asbestos fibers to which Wayne G. Weidner was exposed while onboard U.S. Navy Vessels.

91. The asbestos-containing products and/or equipment were being used in a manner for which they were intended and in a manner which was reasonably foreseeable.

92. Maritime Defendants know or should have known of the dangerous propensities of airborne asbestos fibers; that they had a toxic, poisonous, and highly deleterious effect upon the health of persons such as Wayne G. Weidner, and others, exposed to the fibers could and would cause injury, disease and death.

93. Maritime Defendants that manufactured equipment aboard PLAINTIFF'S Naval Vessels had a duty to warn about the dangers of asbestos-containing replacements parts that were necessary for their equipment to function as intended. They had a duty to warn about the hazards of asbestos exposure because (i) their products required incorporation of an asbestos part, (ii) they knew or had reason to know that the integrated product was likely to be dangerous for its intended uses, and (iii) they had no reason to believe that the product's users would realize the danger. Maritime Defendants' products required asbestos component parts to function as intended in that they directed that the asbestos parts be incorporated, they made their products with asbestos parts that they knew would require replacement with a similar part, and/or their products would be useless without the asbestos component part.

94. Maritime Defendants had a duty to exercise reasonable care and caution in manufacturing, designing, specifying, selling, supplying, installing, or removing asbestos-containing products and/or equipment, for the safety of Wayne G. Weidner and others working with and around those products and/or equipment.

95. Maritime Defendants breached their duties of case by one of more of the following wrongful acts or omissions, all of which were negligent, and/or willful and wanton, and/or undertaken with reckless disregard for, and deliberate indifference to, the foreseeable consequences and injuries to Wayne G. Weidner and others:

a. Failed to adequately warn Wayne G. Weidner or others of the dangers and health hazards from working with or around the asbestos in their products and/or equipment;

b. Failed to investigate or test for the reasonably known and deleterious health effects of asbestos;

c. Failed to instruct Wayne G. Weidner, the United States Government, or the United States Navy, or others in the use of precautionary and/or safety measures relating to airborne asbestos fibers released from Defendants' asbestos products and/or equipment they worked with or around;

d. Used defectively designed asbestos-containing products and/or equipment which did not protect against or prevent the release of asbestos fibers;

e. Failed to warn Wayne G. Weidner or others of the danger of airborne asbestos fibers which continued to be released after the products and/or equipment were installed at the premises;

f. Used and/or specified unsafe techniques in the installation, removal, maintenance, and use of asbestos-containing products and/or equipment;

g. Included asbestos in their products and equipment even though the danger and harm to Wayne G. Weidner and others was reasonably foreseeable, and safer and adequate substitutes were readily available.

96. As a direct and proximate result of the acts and omissions of the Maritime Defendants, Wayne G. Weidner was injured as described above.

97. Maritime Defendants' products were a substantial factor in causing the injured described above.

98. Wayne G. Weidner was substantially exposed to asbestos attributable to Maritime Defendants for a substantial period of time while serving on board U.S. Navy Vessels.

**FIFTH CAUSE OF ACTION**

**MARITIME STRICT LIABILITY ALLEGATIONS**

99. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

100. Wayne G. Weidner's injuries resulted from the condition of Maritime Defendants' products specifically the fact that such products contained asbestos to which he was exposed.

101. The condition of Maritime Defendants' asbestos-containing products and/or equipment was reasonably dangerous to normal use.

102. Maritime Defendants' products contained asbestos at the time the left Maritime Defendants' control.

103. Maritime Defendants' asbestos-containing products and/or equipment were unreasonably dangerous to persons who were exposed to asbestos from them such as Wayne G. Weidner.

104. Maritime Defendants failed to warn Wayne G. Weidner concerning the dangerous properties of their products and/or equipment.

**SIXTH CAUSE OF ACTION**

**ADDITIONAL MARITIME PUNTIVE DAMAGES**

105. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

106. Maritime law allows for the recovery of punitive damages absent any federal statute to the contrary.

107. Maritime Defendants' conduct as set forth in this complaint was intentional, outrageous, or wanton and reckless conduct, done with a conscious disregard of the rights of others such as Wayne G. Weidner

108. Upon information and belief, Maritime Defendants acted maliciously, and/or with intentional disregard for the rights of Wayne G. Weidner for which Plaintiffs are entitled to recover punitive damages.

**SEVENTH CAUSE OF ACTION**

**CONSPIRACY**

**(AS TO DEFENDANT METROPOLITAL LIFE INSURANCE COMPANY)**

109. Defendant METROPOLITAN LIFE INSURANCE COMPANY rendered substantial aid and assistance to the manufacturers of asbestos-containing products and/or equipment to which Plaintiff Wayne G. Weidner was exposed, and such assistance by

METROPOLITAN LIFE INSURANCE COMPANY aided and abetted the negligence and the marketing of unreasonably dangerous asbestos-containing products and/or equipment by such manufacturers which proximately caused Plaintiff Wayne G. Weidner's illness, injuries, and/or disabilities.

110. In both conducting tests and in publishing their alleged results, METROPOLITAN LIFE INSURANCE COMPANY failed to exercise reasonable care to conduct or publish complete, adequate and accurate tests of the health effects of asbestos. METROPOLITAN LIFE INSURANCE COMPANY also caused to be published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure.

111. Plaintiff Wayne G. Weidner's unwittingly but justifiably relied upon the thoroughness of METROPOLITAN LIFE INSURANCE COMPANY's tests and information dissemination, the results of which METROPOLITAN LIFE INSURANCE COMPANY published in leading medical journals.

112. As a direct and proximate contributing result of METROPOLITAN LIFE INSURANCE COMPANY's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so; (i) the risk of harm to Plaintiff Wayne G. Weidner from asbestos exposure was increased, and (ii) Wayne G. Weidner suffered the injuries previously described.

113. In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the other Defendants materially to understate the hazards of asbestos exposure, all for their own profit and

gain, METROPOLITAN LIFE INSURANCE COMPANY acted willfully, wantonly, and with malice in calculated disregard for the welfare of the general public, including Plaintiff Wayne G. Weidner. Plaintiff seeks compensatory and punitive damages against METROPOLITAN LIFE INSURANCE COMPANY as a result.

**EIGHTH CAUSE OF ACTION**

**LOSS OF CONSORTIUM AGAINST ALL DEFENDANTS**

114. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

115. Plaintiff Sandra M. Weidner is the wife of Plaintiff Wayne G. Weidner, and at all pertinent times has been the wife of Plaintiff Wayne G. Weidner.

116. As a direct and proximate result of the breach of duty and wrongdoing of the defendants and the resultant injury to Plaintiff Wayne G. Weidner, as more particularly described in the preceding Counts, Plaintiff Sandra M. Weidner suffers a loss of her right to consortium with her husband and the loss of her husband's services, guidance, affection, comfort, protection, society, counsel, advice, and companionship, and she has suffered great mental anguish.

**ADDITIONAL DAMAGES**

117. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

118. As a result of the development of asbestos-related diseases, Plaintiff Wayne G. Weidner has suffered and sustained very serious injuries to his person, to wit: mesothelioma.

119. Plaintiff has further suffered great pain, extreme nervousness, and mental anguish as a direct result of the aforesaid injuries.

120. Plaintiff verily believes that his injuries and illnesses are recurrent in nature and that he will be forced to suffer same for the remainder of his life; that his enjoyment of life has been greatly impaired; and further, that his expected life span has been greatly shortened.

121. Plaintiff alleges that as a result of the aforesaid illnesses, he has been forced to incur large amounts of medical expenses by way of doctor and drug bills and verily believes that he will be forced to incur additional expenses in an effort to treat his illnesses as aforesaid alleged.

WHEREFORE, the Plaintiffs verily believe they are entitled to actual damages against the Defendants, jointly and severally, by reason of said negligence, gross negligence, breach of warranty, failure to warn and other breaches of duty as alleged herein proximately caused by the fault of the Defendants, lost wages, and special damages in an amount to be determined by the trier of fact, plus the costs of this action.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury of all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court:

A. Award the Plaintiffs compensatory damages, in an amount to be determined at trial;

B. Award the Plaintiffs punitive damages, in an amount to be determined at trial;

C. Award the Plaintiffs pre-judgment and post-judgment interest and any other costs, expenses or fees to which the Plaintiffs may be entitled by law; and

D. Award the Plaintiffs such other and further relief as is just and proper.

**PLAINTIFFS RESPECTFULLY DEMAND A JURY TO TRY THESE ISSUES.**

Respectfully submitted,

Dated: July 16, 2024

*/s/ Christopher P. Duffy*

Christopher P. Duffy, Esq.
BBO No. 648402
DUFFY LAW LLC
Masonic Temple Building
70 Washington Street, Suite 405
Salem, MA 01970
(978) 414-5714
duffy@cpduffylaw.com

ATTORNEYS FOR PLAINTIFFS